# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | 2:06-CR-396 JCM (LRL) |
|---|---|
| Plaintiff, | |
| v. | |
| EZRA HALLOCK, | |
| Defendant. | |

**ORDER**

Presently before the court are petitioner Ezra Hallock's motion to vacate under 28 U.S.C. § 2255 and his subsequent amendment to that motion. (Docs. ## 160 & 166). The government filed a response in opposition (doc. # 167), and petitioner filed a reply (doc. # 200).

Also before the court is petitioner's motion for leave to amend his § 2255 motion to add additional grounds for relief. (Doc. # 173). The government filed a response in opposition (doc. # 181), and petitioner filed a reply (doc. # 201).

As a preliminary matter, the court will grant petitioner's request to amend his initial § 2255 motion, and will address all of the arguments that he presents in his initial motion (doc # 160), his first amendment to that motion (doc. # 166), and his subsequent motion to amend (doc. # 173) on their merits.

**I.     Background**

On October 6, 2006, ICE Special Agent Laura Hodgdon submitted a search warrant application for petitioner's residence. In an affidavit, Agent Hodgdon stated that, as part of an

**James C. Mahan**
**U.S. District Judge**

1  investigation into the users of a program called Google Hello, agents had identified an Ohio resident
2  named Michael Janosko who used that program to send and receive several hundred images of child
3  pornography.

4  Agents had searched Janosko's residence and his computer. Janosko admitted using Google
5  Hello to receive and distribute child pornography under the handle "Jamokie." Forensic analysis of
6  his computer revealed folders containing Google Hello chat logs and filmstrip files. The computer
7  also contained a folder called "friends," which stored the user identification numbers, handles, and
8  email addresses of some users who had communicated with Janosko. One of these user identification
9  numbers was 753923, which listed the handle "camguyalone," and the email address
10 cam_guy_alone@yahoo.com. The folder contained a chat log from August 28, 2005, related to the
11 receipt and distribution of child pornography, as well as thumbnail images of child pornography that
12 Janosko sent to camguyalone.

13 Agents sent summonses to Yahoo!, Google, Cox Communications, and Sprint DSL. From
14 Yahoo!, agents learned that someone had signed up for the email address
15 cam_guy_alone@yahoo.com on April 5, 2001, and that this email address had been accessed from
16 IP address 72.193.4.205 multiple times between May 30, 2006 and June 6, 2006. From Cox
17 Communications, agents learned that the subscriber at IP address 72.193.4.205 was Ezra Hallock of
18 5417 Redview Ct., North Las Vegas, NV.

19 From Google, agents learned that user camguyalone had a user identification number 753923,
20 the email address cam_guy_alone@yahoo.com, which it listed as verified, and that the user had
21 registered for Google Hello on December 1, 2004. Google also reported that someone using the login
22 cam_guy_alone used the IP address 76.0.236.76 to access the Google Hello account. From Sprint,
23 agents learned that the subscriber at IP address 76.0.236.76 was petitioner, at the same address listed
24 above.

25 Agents also discovered that petitioner was a registered sex offender, with a current address
26 matching the address given by Cox Communications and Sprint. Agent Hodgdon and other agents
27 executed the warrant on October 11, 2006.

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

Hallock lived at the residence with his wife and her five-year-old son. During the search, agents recovered thirteen hard drives, two laptop computers, and "hundreds and hundreds of multimedia storage devices." In all, the agents found more than twenty-six videos and more than 600 images of child pornography.

On December 13, 2006, a federal grand jury sitting in Nevada returned a two-count indictment charging petitioner with receipt and possession of child pornography.

On December 18, 2006, Agent Hodgdon arrested petitioner and informed him of his *Miranda* rights. Petitioner waived his rights and told Agent Hodgdon "that everything that [the agents] found on the computers that [the agents had] taken from his residence was his, he was solely responsible for it and that his wife and . . . stepson had nothing to do with it." When Agent Hodgdon asked petitioner if he was aware that the agents had found several hundred images of child pornography on his computers, he said yes.

When she asked if he had downloaded the images from the internet, he said he "may have," then stated that "he fixed computers, and that he would sometimes transfer images from a client's computer onto—not images—he would sometimes transfer data from a client's computer onto one of his computers and he may not have looked at the information that he had transferred."

On April 24, 2008, petitioner's counsel filed an untimely motion to suppress evidence and a motion for permission to file late. The magistrate judge denied the request for late filing and the court affirmed that decision. On November 1, 2008, petitioner's counsel filed a motion to suppress the statements petitioner made during the search of his residence. The magistrate judge recommended that the evidence be suppressed, and the court affirmed that recommendation.

Petitioner was tried by a jury on May 17-19, 2010, and convicted on both counts. On May 24, 2010, petitioner's counsel filed motions for acquittal and for a new trial, which the court denied. The court entered judgment on September 15, 2010, sentencing petitioner to 180 months in custody followed by a life term of supervised release.

Hallock appealed, and the Ninth Circuit affirmed his conviction in an unpublished memorandum disposition. Subsequently, petitioner filed the instant motions for relief pursuant to

28 U.S.C. § 2255.

In the current motions before the court, petitioner lists twelve grounds for relief. He puts forward five counts of ineffective assistance of counsel and alleges seven due process violations.

**II.     Discussion**

Federal prisoners "may move . . . to vacate, set aside or correct [their] sentence" if the court imposed the sentence "in violation of the Constitution or laws of the United States . . . ." 28 U.S.C. § 2255(a). Section 2255 relief should be granted only where "a fundamental defect" caused "a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 345 (1974); *see also Hill v. United States*, 368 U.S. 424, 428 (1962).

Limitations on § 2255 motions are based on the fact that the movant "already has had a fair opportunity to present his federal claims to a federal forum," whether or not he took advantage of the opportunity. *United States v. Frady*, 456 U.S. 152, 164 (1982). Section 2255 "is not designed to provide criminal defendants multiple opportunities to challenge their sentence." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

*A.     Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, a defendant must show deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. . . ." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. To establish deficient performance, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,

1   a trial whose result is reliable." *Id.* at 687. "The defendant must show that there is a reasonable
2   probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
3   different.

4   Petitioner contends that his counsel was constitutionally ineffective by: (1) failing to timely
5   file a motion to suppress the evidence discovered during the search of his home; (2) failing to obtain
6   petitioner's consent prior to continuing the trial date; (3) asking a question in trial that allowed a
7   government witness to refer to suppressed evidence; (4) failing to effectively object to the
8   government's later references to that witness' testimony; and (5) failing to notify the court of a *Brady*
9   violation.

### 1.   Failure to timely file a motion to suppress

In order to prove that the failure to file a motion to suppress constituted ineffective assistance of counsel, a defendant must show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Here petitioner fails to prove that his Fourth Amendment claim is meritorious. Indeed, the facts on the record demonstrate that the investigators had evidence from multiple sources indicating that an individual at petitioner's residence had downloaded child pornography. This evidence was more than sufficient to establish probable cause for the search warrant.

### 2.   Failure to obtain consent to continue trial

The court need not address whether petitioner's counsel was ineffective for failing to obtain his consent prior to continuing the trial in this case, as the Ninth Circuit already rejected this argument in petitioner's direct appeal. *United States v. Hallock*, 454 F. App'x 545, 546 (9th Cir. 2011) ("Contrary to Hallock's argument, scheduling matters, including the need for a continuance, are an attorney's prerogative and may be decided without client approval.")

### 3.   Opening the door to suppressed evidence

While petitioner does appear to be correct that his counsel inadvertently opened the door for a government witness' testimony regarding suppressed statements petitioner made during the search

**James C. Mahan**
**U.S. District Judge**

- 5 -

of his home, this mistake certainly did not render the trial to be unreliable. The testimony in question merely revealed that petitioner used the online handle "camguyalone." Outside of petitioner's statements, the government had compelling evidence, including the records provided by multiple independent web-service companies, indicating that an individual residing at petitioner's address controlled the accounts with that username. Accordingly, the court finds that petitioner was not prejudiced by his counsel's mistake.

### 4. Failure to object

Similarly, petitioner's counsel was not rendered ineffective by the failure to effectively object to the government's reference to the witness' testimony regarding his incriminating statement. In fact, the Ninth Circuit rejected this argument in petitioner's direct appeal. *United States v. Hallock*, 454 F. App'x 545, 547 (9th Cir. 2011) ("[D]uring its closing argument, the government did nothing more than refer to evidence in the record, which is not misconduct.")

### 5. Failure to raise a *Brady* claim

There are three elements of a *Brady* violation: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed . . . either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) (internal quotation marks omitted)).

In the instant case, while petitioner does claim that the government produced a list of over 300 IP addresses which were connected to the username "camguyalone," he fails to state how this information was in any way favorable to him. In fact, his argument reveals that the government turned over this evidence prior to trial, but does not demonstrate that he suffered any prejudice. Without clarifying his how his defense was hindered by the government's failure to produce this evidence earlier or demonstrating that the evidence was exculpatory or impeaching, the court cannot find that a *Brady* violation occurred.

Therefore, the court holds that petitioner has not met his heavy burden of showing that he was denied effective assistance of counsel.

**James C. Mahan**
**U.S. District Judge**

- 6 -

*B.     Due Process*

Petitioner claims that his right to due process was violated because: (1) the government presented false and misleading information to the grand jury; (2) the government used false and misleading information to obtain its search warrant; (3) the indictment was unconstitutionally vague; (4) the government improperly used a 'fake 911 ploy' to enter petitioner's home when executing the search warrant; (5) the court improperly vouched for the credibility of one of the government's witnesses; (6) the government failed to notify petitioner that one of its witnesses was an expert; and (7) the court failed to overrule the jury verdict despite the fact all the evidence against petitioner was circumstantial.

1.     <u>Misrepresentations to the grand jury</u>

Petitioner claims that the government violated his due process rights in its case before the grand jury because it replaced photos in a chat log with asterisks, stated that petitioner's communications were intercepted by an ICE agent, withheld information relating to other IP addresses to which petitioner's username was connected, and stated that petitioner had downloaded images of child pornography.

None of these assertions rise to the level of a due process violation. Petitioner fails to describe how any prejudice was leveled against him by the government replacing photos with asterisks. If anything, this censorship prevented the grand jury from viewing pornographic images, thereby protecting petitioner from improper bias.

The record does not show that the government stated at any point that petitioner's online communications were "intercepted" by an ICE agent. However, even if this were the case, this would not have created prejudice against petitioner. The evidence shows that ICE agents obtained records of petitioner's online communications after seizing the computer of another suspect. The differences between these accounts are immaterial.

Petitioner does not demonstrate that he suffered any prejudice due to the government choosing not to present other IP addresses to which petitioner's username was connected. The evidence shows that the two IP addresses known to be associated with petitioner's residence had

**James C. Mahan**
**U.S. District Judge**

- 7 -

accessed the "camguyalone" accounts on numerous occasions, and thoroughly established that petitioner controlled these accounts.

Finally, though petitioner denies receiving images of child pornography, there is ample evidence on the record indicating that he downloaded child pornography from various online sources.

### 2. Misrepresentations in obtaining the search warrant

Similar to his arguments relating to misrepresentations to the grand jury, petitioner claims that the government made the same misrepresentations in obtaining the warrant to search his residence. However, as previously observed, petitioner fails to describe how he suffered any prejudice due to these alleged misrepresentations. On the contrary, the abundance of evidence available at the time indicates there was probable cause to issue the warrant.

### 3. Defective indictment

Petitioner claims that the indictment was unconstitutionally vague because it did not specify the date on which he began violating the law. However, the Ninth Circuit has repeatedly held that indictments specifying an end date to criminal activity without specifying a start date are sufficiently specific. *See, e.g.*, *United States v. Forrester*, 616 F.3d 929, 941 (9th Cir. 2010).

### 4. 'Fake 911 ploy'

Petitioner argues that his due process rights were violated because government agents used a 'fake 911 ploy' in executing the search warrant. However, it is clearly established that no rights are violated when officers use trickery to aid in their execution of a valid warrant. *See United States v. Michaud,* 268 F.3d 728, 733 (9th Cir. 2001) ("[Defendant's] objection to the use of trickery to encourage her to open her hotel room door is unavailing, given the existence of a valid warrant"); *see also Leahy v. United States*, 272 F.2d 487, 490 (9th Cir. 1959) ("There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant."); *United States v. Contreras–Ceballos*, 999 F.2d 432, 435 (9th Cir. 1993) (officer was justified in claiming to be a Federal Express agent when executing a warrant).

. . .

James C. Mahan
U.S. District Judge

- 8 -

### 5. Vouching for a government witness

Petitioner argues that the court violated his due process rights by explaining to the jury that a witness could qualify as an expert based on experience rather than academic background. Petitioner takes particular issue with the fact that the court referenced "My Cousin Vinny" as a relatable example to the jury. Petitioner's argument is unpersuasive. If the court improperly vouched for a witness by calling him an "expert" or by explaining the rules relating to expert witnesses, every court that has ever admitted expert testimony would have acted improperly.

### 6. Confrontation of a witness

Petitioner claims that his due process rights were violated because the government did not inform him that one of its witnesses, Agent Bujdoso might qualify as an expert. The premise for this claim is mistaken, as Agent Bujdoso testified as a lay witness, not as an expert. Even so, petitioner's counsel carried out a thorough cross-examination of Agent Bujdoso at trial. Petitioner fails to demonstrate how the fact that this witness *could have* qualified as an expert caused him any prejudice.

### 7. Insufficient evidence

Petitioner finally argues that his due process rights were violated because there was not enough evidence to sustain the conviction in this case. The court already addressed this argument when it denied petitioner's motion for a new trial, and petitioner failed to raise it on appeal.

In its order denying petitioner's motion for a new trial, the court stated,

> [T]he evidence is sufficient to prove that [defendant] knowingly possessed and received child pornography. The evidence provided by the government demonstrated that defendant solicited child pornography images from Michael Janosko, and traded child pornography images with him. The government found child pornography images and videos on five separate hard drives in defendant's residence–including those used exclusively by defendant. The evidence showed that defendant used the hard drives on which the child pornography was found and that no files related to anyone other than defendant were found on these hard drives. Additionally the quantity of pornography and defendant's ability to access the storage of the images circumstantially established defendant's knowing receipt of child pornography.

(Doc. # 137 pp. 2-3).

James C. Mahan
U.S. District Judge

- 9 -

Petitioner presents no reason for the court to alter its findings.

Accordingly, petitioner's motion to vacate pursuant to 28 U.S.C. § 2255 will be denied.

### III. Certificate of appealability

The court declines to issue a certificate of appealability. The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a [s]tate court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Under this section, the court may only issue a certificate of appealability when a movant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the movant must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

James C. Mahan
U.S. District Judge

- 10 -

The court finds that petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the court's determination that petitioner is not entitled to relief under § 2255 debatable, wrong, or deserving of encouragement to proceed further. Therefore, the court declines to issue a certificate of appealability.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, DECREED that petitioner's motion for leave to amend his motion to vacate pursuant to 28 U.S.C. § 2255 (doc. # 173) be, and at the same time hereby is, GRANTED.

IT IS FURTHER ORDERED that petitioner's motion to vacate pursuant to U.S.C. § 2255 (doc. # 160) and the additional claims for relief presented in his amendments to the motion are DENIED.

DATED March 14, 2014.

_____
UNITED STATES DISTRICT JUDGE